10-911-cv
*TradeComet.com LLC v. Google, Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 26th day of July, two thousand eleven.

PRESENT:

RALPH K. WINTER,
ROBERT D. SACK,
DEBRA ANN LIVINGSTON,

*Circuit Judges.*

---

TRADECOMET.COM LLC,

*Plaintiff-Appellant*,

-v.-                                          No. 10-911-cv

GOOGLE, INC.,

*Defendant-Appellee*.

---

CHARLES F. RULE (Jonathan Kanter, Joseph J. Bial, and Daniel J. Howley, *on the brief*), Cadwalader, Wickersham & Taft LLP, Washington, D.C., *for Plaintiff-Appellant*.

JONATHAN M. JACOBSON (Sara Ciarelli Walsh, *on the brief*), Wilson Sonsini Goodrich & Rosati, P.C., New York, NY, *for Defendant-Appellee*.

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, and DECREED that the judgment of the district court be AFFIRMED.

Plaintiff-Appellant TradeComet.com LLC ("TradeComet") appeals from a judgment entered pursuant to an opinion and order of the United States District Court for the Southern District of New York (Stein, *J.*) dismissing its complaint. TradeComet brought this action against Defendant-Appellee Google, Inc. ("Google") for alleged violations of the Sherman Act, 15 U.S.C. §§ 1, 2. On March 31, 2009, Google moved to dismiss TradeComet's complaint for lack of subject matter jurisdiction and improper venue, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3). The district court granted Google's motion on March 5, 2010. TradeComet timely appealed to this Court on March 15, 2010. In an opinion filed contemporaneously with this order, we hold that a defendant may seek enforcement of a forum selection clause specifying a federal forum other than the one in which suit is pending through a Rule 12(b) motion to dismiss. *See TradeComet.com LLC v. Google, Inc.*, – F.3d –, No. 10-911-cv (2d Cir. _____ __, 2011). Here, we address whether the district court properly applied our four-part test for determining whether to dismiss a claim based on a forum selection clause. *See TradeComet.com, LLC v. Google, Inc.*, 693 F. Supp. 2d 370 (S.D.N.Y. 2010). We assume the parties' familiarity with the underlying facts and procedural history.

On appeal, TradeComet argues that the district court erred by: 1) failing to conduct an evidentiary hearing on whether TradeComet was reasonably informed of the August 2006 agreement's forum selection clause; 2) applying the August 2006 forum selection clause to claims arising from conduct that occurred prior to Google's publication and TradeComet's alleged acceptance of the August 2006 agreement; and 3) declining to find the forum selection clause unreasonable and/or unconscionable. Our review of a district court's dismissal of a complaint pursuant to Rules 12(b)(1) and 12(b)(3) is *de novo*. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378,

384 (2d Cir. 2007); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). We must view all the facts in the light most favorable to the non-moving party. *Phillips*, 494 F.3d at 384. Our review of a district court's interpretation of a contract is also *de novo*. *Id.* Both parties agree that California state law controls the interpretation of the Google agreements and that federal law applies as to the enforceability of the forum selection clause.

Under our precedent, a determination of "whether to dismiss a claim based on a forum selection clause involves a four-part analysis." *Id.* at 383. First, a court must determine whether the clause was "reasonably communicated to the party resisting enforcement." *Id.* Second, it must determine whether the language of the clause is mandatory, as opposed to merely permissive. *Id.* Third, the court must examine "whether the claims and parties involved in the suit are subject to the forum selection clause." *Id.* If these three requirements are met, the forum selection clause is presumptively enforceable. *Id.* The final step of the analysis requires a court to find whether the party resisting enforcement of the clause "has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Id.* at 383-84 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

**A. The District Court's Factual Findings**

TradeComet argues that the district court committed a legal error by resolving a disputed issue of fact against it without an evidentiary hearing. TradeComet attests that it disputed whether the terms of the August 2006 agreement had been reasonably communicated to it. TradeComet, however, has forfeited this argument by failing to seek an evidentiary hearing before the district court. *See United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 256 (2d Cir. 2004) (noting that the plaintiff waived his right to an evidentiary hearing by failing to request it until after the court

3

ruled against him). We conclude, moreover, that TradeComet failed to raise any material issue of fact as to Google's communication of the terms of the August 2006 agreement that required an evidentiary hearing.

In determining whether to dismiss a claim based on a forum selection clause, the district court must view all the facts in the light most favorable to the party claiming that venue is proper, while "no disputed fact should be resolved against that party until it has had an opportunity to be heard." *New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997). Accordingly, a "*disputed* fact may be resolved in a manner adverse to that party only after an evidentiary hearing." *Id.* (emphasis added). Here, TradeComet points to information provided by Google showing that, in August 2006, a user agreed to the August 2006 agreement for at least ten of TradeComet's AdWords accounts within a span of three seconds. Google, however, did not dispute this fact; rather, it explained that TradeComet had an umbrella account that allowed one user to accept the August 2006 terms and conditions at once for all accounts included under the umbrella (here, the ten accounts that indicated assent). TradeComet did not contest this explanation below, and does not dispute it on appeal. Further, as the district court found, TradeComet did not submit any evidence to the contrary. TradeComet's belated demand for an evidentiary hearing is therefore misplaced; the district court did not err in concluding that TradeComet accepted the terms of the August 2006 agreement.

**B. "Retroactive" Application of the August 2006 Forum Selection Clause**

TradeComet next argues that the forum selection clause contained in its April 2005 and May 2006 agreements with Google should apply in the instant case, and that TradeComet's antitrust claims do not fall within the scope of that clause. It further argues that the district court erred by "retroactively" applying the August 2006 agreement to Google's alleged anticompetitive conduct,

4

which began prior to the effective date of this agreement. We find TradeComet's contentions to be without merit.

Both parties agree that California law controls in interpreting the agreements, including the scope of their respective forum selection clauses. Under California law, "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning." *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 797 (Cal. Ct. App. 1998) (quoting Cal. Civ. Code § 1644). We must apply "the standard statutory rules of contract interpretation in order to ascertain the mutual intention of the parties as it existed at the time the original account agreements were entered into." *Id.* at 798 (citing Cal. Civ. Code §§ 1636, 1637).

TradeComet cites few cases directly addressing the "retroactive" application of a forum selection clause. We are therefore guided here by analogous cases discussing the retroactive application of arbitration clauses. *See AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 158 (2d Cir. 1984) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518-19 (1974)) ("[A]n agreement to arbitrate . . . is, in effect, a specialized kind of forum-selection clause . . . ."). Courts construing arbitration clauses have refused to subject claims to arbitration where the claims arise from or relate to conduct occurring prior to the effective date of the agreement, *and* where the clause is limited to claims under "*this* Agreement." *See, e.g.*, *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1117-19 (11th Cir. 2009) (refusing to apply arbitration clause "retroactively" where the clause applied to "[a]ny and all disputes arising out of or in connection with *this Agreement*" (emphasis added)); *Wachovia Bank N.A. v. Schmidt*, 445 F.3d 762, 767-69 (4th Cir. 2006) (same); *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999) (finding arbitration clause inapplicable to disputes under previous agreements where clause applied to all claims "arising out of or relating to the [p]roducts furnished *pursuant to this Agreement* or acts or omissions . . . under *this*

5

*Agreement*" (emphasis added)).

In contrast, courts have found claims arising from or related to conduct occurring before the effective date of an arbitration clause to be *within* the scope of a clause that "is not limited to claims arising under the agreement itself." *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007). In such circumstances, "courts have allowed arbitration agreements to apply retroactively to transactions that occurred prior to the execution of the agreement." *Id.* The court in *In re Verisign* rejected a retroactivity argument similar to TradeComet's, on the ground that the arbitration provision was "extremely broad, and cover[ed] not just services provided under the Agreement, but also 'any other services provided by'" the defendant. *Id.*; *see also In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 407 (S.D.N.Y. 2003) (finding arbitration clause applicable to claims arising prior to execution of the agreement when it covered claims beyond those under the agreement); *cf. Al-Thani v. Wells Fargo & Co.*, No. C 08-1745, 2009 U.S. Dist. LEXIS 2732, at *16-*17 (N.D. Cal. Jan. 7, 2009) (finding arbitration clause applicable to claims arising prior to execution of agreement, and observing that a clause not limited to claims under the agreement "place[s] no retroactive obligation on Plaintiff" and merely imposes a "*prospective* obligation to arbitrate, rather than litigate").

TradeComet nevertheless contends that California courts are hostile towards such retroactive application of forum selection clauses. TradeComet's cited case law, however, does not support this view. In *Bancomer S.A. v. Superior Court of Los Angeles County*, for example, the court refused to apply the forum selection clause because the party against whom enforcement was sought was never a party to the agreement containing the clause. 44 Cal. App. 4th 1450, 1459-61 (Cal. App. Ct. 1996). In *Allez Medical Applications v. Allez Spine, LLC*, No. G037314, 2007 WL 927905 (Cal App. Ct. Mar. 29, 2007) (unpublished), the arbitration clause at issue did not take effect until after

6

the plaintiff filed suit. *See id.* at *1. Neither of these cases, fairly read, support TradeComet's broad proposition. In fact, California courts "have placed a substantial burden on a plaintiff seeking to defeat a [forum selection] clause, requiring it to demonstrate enforcement of the clause would be unreasonable under the circumstances of the case." *CQL Orig. Prods., Inc. v. Nat'l Hockey League Players' Ass'n*, 39 Cal. App. 4th 1347, 1354 (Cal. Ct. App. 1995).

Here, the plain language of the August 2006 agreement applies to claims "arising out of or relating to this agreement *or the Google Program(s)*." August 2006 Adwords Agreement ¶ 9 (emphasis added). "Google Programs," in turn, is defined to include the AdWords program at issue in this case. *See id.* ¶ Introduction. The forum selection clause is therefore not limited to claims arising from or related to the August 2006 agreement itself; it broadly includes any claim arising under or related to the "Google Programs," irrespective of whether it arose prior to or subsequent to the acceptance of the August 2006 agreement. The district court expressly found TradeComet's claims to "relate to" the "Google Programs," a finding TradeComet does not dispute on appeal. In addition, the April 2005 and May 2006 agreements expressly permitted Google to modify the forum selection clause to that contained in the August 2006 agreement, which – through TradeComet's acceptance – "*supersede[d] and replace[d]* any other agreements, terms and conditions applicable to the subject matter hereof." August 2006 AdWords Agreement ¶ 9 (emphasis added). The district court therefore did not impermissibly give "retroactive" effect to the August 2006 forum selection clause.

**C. Unreasonableness and Unconscionability**

TradeComet finally argues that enforcement of the forum selection clause would be unconscionable and against public policy. TradeComet bears the burden of showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as

7

fraud or overreaching." *Phillips*, 494 F.3d at 384 (quoting *Bremen*, 407 U.S. at 15). This exception to enforcement "is interpreted narrowly," and rebuts the presumption of enforceability where, *inter alia*, the incorporation of the clause "into the agreement was the result of fraud or overreaching," or "if the clause[] contravene[s] a strong public policy of the forum state." *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 711 (2d Cir. 2010) (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993)). For the following reasons, TradeComet's arguments fail.

1. *Overreaching*

TradeComet first contends that the forum selection clause is unenforceable because it was the result of overreaching on Google's part. In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), the Supreme Court held that a forum selection clause contained in a form passage contract was enforceable, *id.* at 595, despite the fact that the terms of the form passage contract were not subject to negotiation, and that individuals had no bargaining power with the vendor, *id.* at 593. The Court rejected the argument that a non-negotiated forum selection clause was never enforceable simply because it was not subject to bargaining. *Id.* The Court found that a reasonable forum selection clause was permissible where there was a "special interest in limiting the fora in which [a party] potentially could be subject to suit." *Id.* Such a "special interest" was present where there were transactions with individuals from many locales, and where a mishap could subject the vendor to litigation in several different fora. *See id.*

Similar concerns warrant finding the forum selection clause reasonable in this case. TradeComet itself attests that Google is "the essential medium for search advertising to *over a million advertisers*, ranging from the largest companies in the world to the smallest, unsophisticated operations." Appellant's Br. 5 (emphasis added). Each of these advertisers, meanwhile, agrees to the terms of the agreement at issue in this case in connection with its participation in programs like

8

AdWords. Google unquestionably holds a "special interest" in making sure that it is not subject to suit in numerous different fora for claims arising from its agreements with over a million advertisers.

TradeComet nevertheless argues that Google's ability to "modify . . . [the] Terms at any time without liability" constitutes overreaching where it expands the scope of an agreement into areas not contemplated by the original agreement. Specifically, TradeComet contends that Google's modification of its forum selection clause to include claims arising from or relating to "the Google Programs" was such an unreasonable expansion. TradeComet's own cited precedent, however, expressly distinguishes modifications to an agreement that were "clearly related to a matter addressed in the original contract." *Badie*, 67 Cal. App. 4th at 792. Here, a forum selection clause specifying Santa Clara County, California as the locus for litigation was present in all three of the relevant agreements. The modification to the forum selection clause was therefore "clearly related" to a matter addressed by the agreements – namely, where cases between the parties were to be tried. Furthermore, TradeComet points to no evidence suggesting that Google's purpose in modifying the forum selection clause was to discourage plaintiffs from bringing suit. *See Shute*, 499 U.S. at 595 (noting the Supreme Court's concern over forum selection clauses that serve as "means of discouraging [plaintiffs] from pursuing legitimate claims"). TradeComet's claims of overreaching are therefore without merit.

*2. Public Policy*

Relying on our prior decision in *American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F.2d 821 (2d Cir. 1968), TradeComet next contends that Google's forum selection clause is contrary to public policy favoring enforcement of antitrust laws by private parties. This argument fails. The Supreme Court limited *American Safety Equipment Corp.* in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), where it held that arbitration clauses subjecting

9

federal antitrust claims to arbitration were enforceable. *Id.* at 640. In doing so, the Court found that "[t]he mere appearance of an antitrust dispute does not alone warrant invalidation of the selected forum on the undemonstrated assumption that the arbitration clause is tainted." *Id.* at 632. In accordance with *Mitsubishi Motors*, we have also found enforceable an arbitration clause applicable to federal antitrust claims. *See JLM Indus. Inc. v. Stolt-Nielsen S.A.*, 387 F.3d 163, 181 (2d Cir. 2004). We held in *Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718 (2d Cir. 1982), moreover, that a forum selection clause was applicable to the plaintiff's federal antitrust claims. *See id.* at 720. In short, both this Circuit and the Supreme Court have made clear that the mere existence of a federal antitrust claim does not void a forum selection clause as against public policy. TradeComet thus fails to meet its burden of demonstrating that the forum selection clause was unreasonable or unconscionable.

**D. Conclusion**

We have considered the parties' remaining arguments and find them to be moot or without merit. For the foregoing reasons, and for the reasons stated in an opinion filed contemporaneously with this order, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10